KAMINI FOX, PLLC
825 East Gate Blvd., Suite 308
Garden City, New York 11530
Phone: (516) 493-9920
Fax: (516) 255-6905
kamini@kfoxlaw.com
Kamini Fox, Esq.

*Attorney for Plaintiff, Mathew Thomas*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:

JON FINOCCHIO AND MARIA GELO
FINOCCHIO,

                    Debtors.
---------------------------------------------------------------X
MATHEW THOMAS, individually and on behalf of
JF & MT, LLC d/b/a A EXPRESS,

                    Plaintiffs,

     -against-

JON FINOCCHIO,

                  Defendant.
---------------------------------------------------------------X

Chapter 7
Case No. 21-71261-reg

Adv. Proc. No.:

## COMPLAINT OBJECTING TO
## DISCHARGE PURSUANT TO 11 U.S.C. § 523(a)

MATHEW THOMAS ("Thomas"), individually and on behalf of JF & MT, LLC d/b/a A

Express ("LLC"), a creditor and the plaintiff herein (collectively the "Plaintiffs"), as and for their

Complaint against the debtor, JON FINOCCHIO (the "Debtor" or "Defendant"), respectfully

allege as follows:

1

## JURISDICTION

1. Plaintiffs file this Complaint pursuant to 11 U.S.C. § 523 of the Bankruptcy Code (the "Bankruptcy Code), and Rule 4007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. This is an adversary proceeding in which Plaintiffs object to the Debtor's dischargeability of the debt owed to Plaintiffs under Sections 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code.

3. This Complaint is timely as the last date to object to dischargeability of debts in this case is October 18, 2021.

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, and Sections 523 of the Bankruptcy Code.

5. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## THE PARTIES

7. Thomas is a resident of the State of New York, County of Nassau, and is the former business partner of the Debtor.

8. The LLC is a New York Limited Company duly organized under the laws of the State of New York, with its principal place of business at 15 West 39th Street, New York, New York 10018.

9. Defendant is the Debtor in the above-captioned Chapter 7 case and, is a resident of the State of New York, County of Nassau.

## PROCEDURAL HISTORY

10. On July 7, 2021, the Debtor and his spouse, Maria Gelo Finocchio ("Joint Debtor") filed a voluntary petition (the "Petition") seeking relief under Chapter 7 of the Bankruptcy Code with the United Bankruptcy Court for the Eastern District of New York ("Chapter 7 Case").

11. Due to the case being incorrectly filed in the Brooklyn Division, David J. Doyaga was duly appointed the Chapter 7 trustee but was then terminated shortly thereafter.

12. The Chapter 7 Case was re-assigned to the Central Islip Division and Allan B. Mendelsohn was duly appointed the Chapter 7 trustee (the "Trustee").

13. The Section 341(a) Meeting of Creditors was scheduled for and held on August 17, 2021 and was adjourned to be continued on September 21, 2021.

## FACTUAL ALLEGATIONS

14. Thomas and Defendant acquired the LLC in or about August 2017 as an ongoing business from Guardian Worldwide, LLC.

15. The LLC is engaged in the courier and messenger service for businesses and the general public.

16. On or about August 30, 2017, Thomas and Defendant entered into a certain Operating Agreement ("Operating Agreement"), wherein it was agreed that Defendant would own 60% of the LLC and Thomas would own 40%. See ¶7 of the Operating Agreement, a copy of which is annexed hereto as **Exhibit A**.

17. To fund the purchase and start-up costs of the business, on November 27, 2017, the LLC took a loan from Hyperion Bank ("Hyperion") in the total sum of $608,500 (the "Hyperion Loan"), pursuant to a Note executed by Thomas and the Debtor on the same date.

18. The Hyperion Loan was backed and funded by the Small Business Administration ("SBA").

19. The Hyperion Loan was further secured by a certain Loan and Security Agreement dated November 27, 2017 ("Security Agreement"), which granted Hyperion Bank a security interest in and a lien in substantially all of the assets of the LLC.

20. The Security Agreement was perfected by the filing of a UCC-1 with the New York Department of State by Hyperion.

21. The Hyperion Loan was further personally guaranteed by Thomas and Defendant and by a limited guarantee of Defendant's wife, the Joint Debtor herein.

22. A Mortgage, Assignment of Rents, Security Agreement and Fixture Filing was also executed by Defendant and Joint Debtor pursuant to which Hyperion was granted a lien on their real property located at 114 Dorset Ave., Albertson, NY 11507 ("Albertson Property").

23. Thomas also executed a Mortgage, Assignment of Rents, Security Agreement and Fixture Filing granting Hyperion a lien on his real property located at 216 Raff Avenue, Mineola, New York 11501 ("Mineola Property").

24. Pursuant to the Operating Agreement, each party agreed that they would keep sufficient equity in their respective real property to secure their respective portion of the Hyperion Loan i.e. 60% Defendant and 40% Thomas.

25. From November 2017 through September 19, 2019, the LLC made all required payments due under the Hyperion Loan.

26. In September 2019, the LLC lost one (1) of two (2) significant accounts and as a result, lost 50%-60% of its annual revenue.

27. The Operating Agreement provided that in the event the LLC was unable to make the monthly payments on the Hyperion Loan, Defendant and Thomas would make said payments from their personal funds equal to their respective ownership interest in the LLC i.e. 60% Defendant, 40% Thomas.

28. The Hyperion Loan became delinquent in or around October 2019.

29. The monthly payments on the Hyperion Loan fluctuated but ranged between $7,190.56 and $7,400.

30. In or around October 2019, Thomas and Defendant attempted to re-work the Hyperion Loan and sought to refinance same at SB One Bank, to make the monthly payments more affordable.

31. During the process of the refinancing with SB One Bank, Defendant approached Thomas to buy his interest in of the LLC.

32. In January 2020, in accordance with his intention to buy-out Thomas from the LLC, Defendant changed the name on the application to SB One Bank to be solely in his name was going to assume full responsibility on the Hyperion Loan.

33. The Operating Agreement vested both Thomas and Defendant with managerial powers.

34. However, from the inception of the LLC, Defendant was the manager and ran the day-to-day operations including managing the corporate bank accounts and checkbooks, manage all employees, pay all monthly expenses, including but not limited to, payroll and taxes, the Hyperion Loan payment and other regular business expenses.

35. Thomas did not go into the office on a daily basis but would occasionally stop by at the business.

36. Thomas had full access to the corporate bank account, was a signatory to the corporate bank account, and had access to all books and records.

37. The parties agreed that Defendant would take a draw of $3,000 per month and Thomas would take a draw of $2,000 per month.

38. It was also agreed between the parties, that Defendant was allowed to charge a maximum of $1,000 and Thomas a maximum of $500 of expenses on their individual corporate credit card.

39. In September 2019, Thomas, while reviewing the bank records of the LLC discovered that Defendant had consistently taken funds from the LLC's corporate account to pay his personal expenses such as his car payments, children's sports, dental and orthodontic bills and other personal expenses, which were unauthorized and improper (the "Improper Charges").

40. These Improper Charges total approximately $79,000 based upon the records Thomas was able to gain access to.

41. In addition, Thomas discovered that Defendant charged unauthorized corporate credit card expenses of approximately $36,700.

42. These actions by Defendant were detrimental to both the LLC and Thomas.

43. In or about April 2020, the LLC lost its second largest client and almost all of its other clients due to the COVID-19 pandemic and the subsequent shut down of Manhattan.

44. As a result of the COVID-19 pandemic, the business almost came to a complete halt.

45. This was a significant blow to the LLC's business.

46. In April 2020, the LLC had between 8 and 12 part-time and full-time employees, with a monthly payroll cost of approximately $12,500.

47. In or about June 2020, it had to reduce its workforce to approximately 3-4 employees.

48. As a result of the COVID-19 pandemic, on or about May 2020, the LLC received $38,000 in Personal Payroll Protection funds ("PPP Funds").

49. On or about June 2020, the LLC further received $150,000 from the Economic Injury Disaster Loan L ("EIDL") Relief Program.

50. At this point, the LLC was approximately nine (9) months delinquent on the Hyperion Loan and was thus ineligible for the SBA Debt Relief Forbearance Program.

51. Despite this influx of funds, Defendant did not pay the Hyperion Loan and allowed it to remain in delinquency status.

52. Defendant, however, continued to pay himself and pay his own personal expenses using corporate funds before paying other legitimate and necessary expenses of the LLC.

53. Defendant also continued to use the LLC's credit card to make purchases for himself that were personal and not business related.

54. Such withdrawals and advances by Defendant were unauthorized and improper and caused substantial harm to the LLC and Thomas.

55. In June 2020, Thomas informed Defendant in writing that because of the lack of business income, they each needed to stop taking their respective draws and begin paying the Hyperion Loan directly using their personal funds pursuant to the Operating Agreement.

56. At this time, Thomas again confronted Defendant about the funds he had improperly taken from the LLC's corporate account.

57. Defendant assured Thomas that he will immediately cease taking draws from the LLC and stop paying his personal expenses from the LLC's corporate account.

58. Despite these assurances, Defendant continued to pay his personal expenses from the LLC's corporate account and continued to take his draw of $3,000.

59. On July 6, 2020, in order to safeguard the funds of the LLC, Thomas withdrew $200,000 from the corporate bank account held at Citibank, N.A. and placed it in a separate bank account held at Radius Bank in the name of NMT Unlimited Inc., a business owned by his fiancé, until he was able to open an account in the name of the LLC at Bank of America.

60. Thomas took these funds to ensure that Defendant would not continue to siphon away the corporate funds to pay his personal expenses and to ensure that they would be used to pay legitimate corporate expenses.

61. There was approximately $33,000 remaining in the corporate account at Citibank, N.A., which was a majority of the PPP funds, which Thomas believed was sufficient to pay corporate expenses going forward such as payroll, rent, and utilities.

62. In June 2020, the LLC had approximately 3-4 employees with a monthly payroll cost of approximately $4,000 and a monthly rent of $2,100.

63. On or about July 8, 2020, Defendant withdrew the remaining $33,000 allegedly to safeguard it from Thomas, and opened an account at Chase in the LLC's name ("Chase Account").

64. Defendant allegedly used the funds in the Chase Account to continue to pay the ordinary business expenses of the LLC.

65. Thereafter, the parties' relationship deteriorated rapidly, with Defendant canceling Thomas' corporate credit card, changing the locks to LLC's office, and effectually shut Thomas out of the business as of August 2020.

66. Despite due demand, Defendant failed to account for the unauthorized withdrawals from the LLC's corporate account, and credit card charges on the corporate account, in addition to failing to provide an accounting of the $33,000 in the Chase Account.

67. Of the $200,000, Thomas paid approximately $151,900 towards the Hyperion Loan to attempt to bring it current, took a draw of approximately $22,000, and used the remainder for other legitimate business expense, including paying the accountant for the LLC.

68. On July 21, 2020, Thomas commenced a lawsuit in the Supreme Court, County of Nassau, entitled *Mathew Thomas, individually and on behalf of JF & MT, LLC d/b/a Aexpress v. Jon Finocchio*, bearing Index No. 607403/2020 (the "Thomas Lawsuit").

69. Thereafter, on August 6, 2020, Defendant commenced a lawsuit against Thomas in the Supreme Court, County of New York entitled *Jon Finocchio, and JF & MT, LLC d.b.a. "A Express" v. Matthew Thomas*, bearing Index No. 608025/2020 (the "Finocchio Lawsuit").

70. Both the Thomas Lawsuit and Finocchio Lawsuit were consolidated on March 18, 2021, and the parties agreed to mediate.

71. The mediation was unsuccessful and the parties entered into a Preliminary Conference Order before the Honorable Judge Mahon.

72. Upon information and belief, Defendant closed the LLC in June 2021 without Thomas' consent and against his express objection.

73. Pursuant to the Preliminary Conference Order, Thomas served discovery demands and sought to take the deposition of Defendant.

74. Defendant failed to respond to the discovery demands within the required time period set forth in the Preliminary Conference Order.

75. Thomas, in order to prove the falsity of certain allegations, subpoenaed the parties' former joint attorney, Vito Giannola ("Giannola"), for a non-party deposition.

76. Giannola, despite being an officer of the court, failed to appear for a deposition on two separate occasions after being subpoenaed.

77. As a result of Giannola's failure to appear, Thomas brought an application seeking to hold Giannola in contempt for failing to appear to a judicially served subpoena, which motion was returnable on July 15, 2021.

78. Just prior to the July 15th return date, Defendant filed the instant bankruptcy case on July 7, 2021, staying the State Court actions.

**AS AND FOR A FIRST CAUSE OF ACTION**
(Accounting)

79. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "77" above as if fully set forth at length herein.

80. Defendant failed to account to Plaintiffs for all sums expended during his operation of the LLC despite due demand.

81. Defendant has failed to account to Plaintiff for all profits and expenses concerning the operation of the LLC.

82. Based on the foregoing, Defendant is required to account to Plaintiffs for all profits received and sums expended by Defendant during his management of the LLC.

83. Defendant is required to account to Plaintiff for the proceeds of the PPP loan received by the LLC.

84. Plaintiff has no adequate remedy at law.

85. Based upon the foregoing, Defendant shall be required to account to Plaintiff for all profits and expenses received and paid in connection with the operation of the LLC and all

sums expended during the operation of the LLC by Defendant, and to pay to Plaintiffs all profits or other funds rightfully belonging to Plaintiffs, plus the cost and disbursements of this action, including reasonable attorney's fees.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Breach of Contract)**

86. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "85" above as if fully set forth at length herein.

87. Plaintiffs and Defendant entered into the Operating Agreement wherein it was agreed that each party would keep sufficient equity in their real property to be used as security for the Hyperion Loan.

88. Defendant failed to keep and maintain sufficient equity in his home as required by the Operating Agreement to secure the Hyperion Loan.

89. Each party also agreed that each would pay their respective shares of the Hyperion Loan if the LLC could not make the required monthly payments.

90. Defendant failed and refused to pay his portion of the Hyperion Loan as required by the Operating Agreement.

91. Defendant breached the Operating Agreement by failing to pay his portion of the Hyperion Loan, thereby making it impossible for Plaintiff to comply with his responsibility to pay his portion of the Hyperion Loan as Hyperion refused to accept partial payment of the total amount due to bring the Hyperion Loan current.

92. Based upon the foregoing, Plaintiff has been damaged in a sum to be determined at trial, plus costs and disbursements of this action, including reasonable attorney's fees.

## AS AND FOR A THIRD CAUSE OF ACTION
(Conversion)

93. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "92" above as if fully set forth at length herein.

94. Defendant improperly removed funds from the LLC's corporate account held at Citibank, N.A. for his own use and to pay personal expenses.

95. Defendant kept all funds legitimately belonging to Plaintiffs received from the operation of the LLC.

96. Defendant intentionally exercised dominion and control over the funds of the LLC so as to interfere with Plaintiffs' right of possession of said funds.

97. Defendant's actions constitute an intentional interference to the complete exclusion of Plaintiffs' ownership rights to such funds.

98. Defendant acted without Plaintiffs' authority.

99. Defendant wrongfully converted funds belonging to Plaintiffs which constituted their property.

100. As a result of the foregoing, Plaintiffs have sustained damages in a sum to be determined at trial, plus interest, costs and disbursements of this action, including reasonable attorney's fees.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Restitution)

101. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "100" above as if fully set forth at length herein.

102. At all times hereinafter mentioned, Plaintiffs relied on Defendant to safeguard the funds of the LLC.

103. At all times hereinafter mentioned, Defendant knew Plaintiffs were relying on him to safeguard the profits of the LLC rightfully belonging to Plaintiffs.

104. At all times hereinafter mentioned, Defendant knew Plaintiffs expected all sums provided to be used for legitimate and proper corporate expenses of the LLC.

105. At all times hereinafter mentioned, Defendant knew that Plaintiffs expected to receive 40% of the profits of the LLC and that all expenses of the LLC were to be paid.

106. At all times hereinafter mentioned, Defendant accepted and received the funds from the LLC that rightfully belonged to Plaintiffs with knowledge that Plaintiffs fully expected such funds to be repaid to Plaintiffs.

107. Defendant never performed any services equal to the value of the funds improperly taken by Defendant from the LLC.

108. Based on the foregoing, Plaintiffs are entitled to restitution of all funds improperly taken by Defendant.

109. Based upon the foregoing, Plaintiffs have been damaged in a sum to be determined at trial, plus the costs and disbursements of this action, including reasonable attorney's fees.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Unjust Enrichment)

110. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "109" above as if fully set forth at length herein.

111. Defendant improperly took profits and distributions from the LLC that rightfully belonged to Plaintiffs.

112. Said sums are still due and owing to Plaintiffs despite due demand for a turnover.

113. As a result, Defendant has been unjustly enriched to the detriment of Plaintiffs.

114. Defendant is now estopped from avoiding payments of the sum to be determined at trial, plus the costs and expenses of this action, including reasonable attorney's fees.

115. Based upon the foregoing, Plaintiffs have been damaged in a sum to be determined at trial, plus the costs and disbursements of this action, including reasonable attorney's fees.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

116. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "115" above as if fully set forth at length herein.

117. Defendant is and was the managing member of the LLC.

118. As the managing member, Defendant owed Plaintiffs a fiduciary duty of the utmost loyalty and good faith.

119. Defendant breached his fiduciary duty to Plaintiffs by failing to pay legitimate corporate debts, by taking unauthorized advances and distributions, and by failing to account for funds removed from the LLC.

120. Based upon Defendant's breach of his fiduciary duty, Plaintiffs have suffered and continue to suffer damages.

121. Based upon the foregoing, Plaintiffs have been damaged in a sum to be determined at trial, plus the costs and disbursements of this action, including reasonable attorney's fees.

## AS AND FOR A SEVENTH CAUSE OF ACTION
**(Debt non-dischargeable under 11 U.S.C. § 523(a)(2)(A))**

122. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs "1" through "121" above as if fully set forth at length herein.

123. Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
  (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by- -

   (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

*See* 11 U.S.C. § 523(a).

124. Despite being under a duty to do so, Defendant as the manager of the LLC failed to pay legitimate corporate debts, took unauthorized advances and distributions, and failed to account for funds removed from the LLC.

125. Defendant wrongfully converted funds belonging to Plaintiffs which constituted their property.

126. Despite assurances from Defendant to Thomas that he would cease taking draws from the LLC and stop using corporate funds for his personal use, Defendant continued to do same.

127. These representations were made by Defendant at a time when Defendant knew they were false and were made with the intention and purpose of deceiving Thomas.

128. Thomas actually, justifiably and reasonably relied on Defendant's representations and Plaintiffs' reliance was reasonable.

129. As a result of Defendant's misrepresentations, Plaintiffs have suffered damages.

15

130. Based upon the foregoing, the debt owed by Defendant to Plaintiffs is non-dischargeable within the meaning of Section 523(a)(2)(A) of the Bankruptcy Code.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Debt non-dischargeable under 11 U.S.C. § 523(a)(4))

131. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "130" above as if fully set forth at length herein.

132. Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

> (a)  A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-
> . . .
>       (4)  for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . .

*See* 11 U.S.C. § 523(a)(4).

133. As the managing member, Defendant owed Plaintiffs a fiduciary duty and breached same by failing to pay legitimate corporate debts, by taking unauthorized advances and distributions, and by failing to account for funds removed from the LLC.

134. Defendant while acting in a fiduciary capacity acted in bad faith, moral turpitude or engaged in other immoral conduct, and extreme recklessness which Defendant knew would cause harm to Plaintiffs, and which did cause harm to Plaintiffs.

135. Based upon the foregoing, the debt owed by Defendant to Plaintiffs is non-dischargeable within the meaning of Section 523(a)(4) of the Bankruptcy Code.

### AS AND FOR A NINTH CAUSE OF ACTION
### (Debt non-dischargeable under 11 U.S.C. § 523(a)(6))

136. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "135" above as if fully set forth at length herein.

137. Bankruptcy Code § 523(a)(6) provides, in relevant part, that:

> (b)  A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-
> . . .
>     (6)  or willful and malicious injury by the debtor to another entity or to the property of another entity . . .

*See* 11 U.S.C. § 523(a)(6).

138. Defendant took unauthorized distributions and draws from the LLC and paid his personal expenses using corporate funds, knowing that these funds rightfully belong to Plaintiffs, with knowledge that Plaintiffs fully expected such funds to be repaid to Plaintiffs.

139. Defendant's actions were willful and malicious and caused injury to Plaintiffs and Plaintiff's Property. As such, the debt owed by the Debtor to Plaintiff is non-dischargeable within the meaning of Section 523(a)(6) of the Bankruptcy Code.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in favor of Plaintiffs on each cause of action stated herein, and finding that the and against Defendant, as follows:

a. On the **First Cause of Action**, Plaintiffs seek a full accounting from Defendant to Plaintiffs for all profits and expenses received and paid in connection with the operation of the LLC and all sums expended during the operation of the LLC by Defendant and to pay to Plaintiffs all profits or other funds from the operation of the LLC, rightfully belonging to Plaintiffs;

b. On each of the **Second Cause of Action**, **Third Cause of Action, Fourth Cause of Action, Fifth Cause of Action, and Sixth Cause of Action**, Plaintiffs seek to recover sums to be determined at trial, plus the cost and disbursements of this action, including reasonable attorney's fees;

c. On the **Seventh Cause of Action**, finding that the debt owed to Plaintiffs is non-dischargeable under Sections 523(a)(2)(A);

d. On the **Eighth Cause of Action**, finding that the debt owed to Plaintiffs is non-dischargeable under Sections 523(a)(4);

  e. On the **Ninth Cause of Action**, finding that the debt owed to Plaintiffs is non-dischargeable under Sections 523(a)(6); and,

  f. Grant such other and further relief as this Court may deem just and proper.

Dated: Garden City, New York    KAMINI FOX, PLLC
   September 22, 2021     Attorney for Plaintiff, Mathew Thomas

            By:  _/s/ Kamini Fox_____
               Kamini Fox
               825 East Gate Blvd., Suite 308
               Garden City, New York 11530
               Phone: (516) 493-9920
               kamini@kfoxlaw.com